IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                 Civil No. 1:04CV41

M-K SPECIALTIES MODEL M-14
MACHINEGUN SERIAL NUMBER
1447797, ET. AL.,

        Defendants.

<u>Government's Reply Brief</u>

1.  Claimants' suggestion (Opp. 3- 4) that the facts related to the restoration process described in footnote 8 of the government's memorandum are in dispute is the first of many arguments that make much ado about nothing.[1]  Claimants concede that ATF technician Vasquez made a typical MKS rifle fire automatically in about fifty minutes (Opp. 10[2]), and that he did it with a hand held Dremell tool that was at times inexpensively accessorized with a cutoff wheel or a carbide drill bit. (Opp. 3 - 4.) Further, claimants do not dispute that the only other tools and

---

[1]  Thus, in the same paragraph that claimants admit that Vasquez "cut a hole", they quibble (Opp. 3) about the government's use of the word  "drilled" to describe the restoration process effectuated with a hand held Dremell tool. (Opp. 4.) Technically, a Dremell tool is a hand held grinding device, which can be accessorized with a drill bit or a cutting wheel. Although in every day vernacular, a Dremell tool is referred to as a hand held drill, it is more precise to refer to the instrument as a grinding tool. However, for purposes of this case, it does not matter whether Vasquez used the Dremell tool to "drill", "cut", or "grind". All that matters, is that when Vasquez was done, there was a hole through which the required machinegun parts could be mounted.

      Claimants similarly argue (Opp. 4) about the government's description of the part of the process through Vasquez made a hole in the MKS receiver's "selector tab", which claimants insist is a "dummy, non-functional" part. The government has never argued that the MKS receiver's  "selector tab" was functional. Instead, the government was merely trying to orient the spot where Vasquez made the hole to insert a selector shaft to enable the MKS receiver to fire automatically.

[2]  Before Vasquez was deposed, claimant Kelly admitted that an MKS receiver could be restored to fire automatically in "a little less" than two hours.  Appendix 6, pp. 263, 264.

equipment that Vasquez needed were a hammer, a punch, a screwdriver, and a welding machine. Similarly, claimants do not contest that the only additional parts required for the restoration are a selector shaft and spring, sear release, retaining pin, and selector, which together cost approximately forty ($40) dollars.

2.  Claimants' argument (Opp. 4 - 5) that Vasquez is an expert gunsmith is not material to the issue of whether MKS receivers can be "readily" restored to shoot automatically. The suggestion that the statute should be construed to exclude restorations effectuated by experts conflicts with claimants' argument (Opp. 9 - 10) that the word "'readily' . . . must be given its ordinary, contemporary, common meaning." If they are reasonable, claimants must concede that the dictionary definition of the word "readily" does not include the word "expert".[3]

Therefore, it is not surprising, that claimants have failed to cite a single case holding that the word  "readily" refers only to restorations that can be accomplished by non-experts such as hobbyists. No court has so held because one of the purposes of the National Firearms Act is to keep machineguns off of the streets. Claimants cannot seriously argue that congress intended to permit street gangs to hire expert gunsmiths to make MKS rifles fire automatically in about 50 minutes with additional parts costing approximately $40. Conversely, "courts have held that the 'readily restorable' test is satisfied . . . even if the restoration required the application of some degree of skill"  and the use of some tools or parts. *U.S. v. One TRW, Model M14, 7.62 Caliber Rifle,* 294 F.Supp.2d 896, 900 (E.D. Ky 2003). Thus, in *U.S. v. Aguilar-Espinosa,* 57 F.Supp.2d 1359, 1362 (M.D. Fla. 1999), the court assumed that the term "readily restorable" included procedures that could, "but not necessarily", would require an "expert or artistic worker" to accomplish. There, the court was making the point that it is not a defense in a criminal case to assert that an individual with no machine skills could not restore a weapon's automatic fire

---

[3] The Miriam Webster On Line Dictionary defines the word "readily" in pertinent part as follows: "without much difficulty: EASILY."  Thus, the word "readily" can be applied to the actions of anyone, including an expert.

capability.

3.  Claimants assertion (Opp. 6) that the facts alleged in footnote 1 of the government's motion are in dispute is another hyper-technical argument that is not based on substance. The only alleged factual dispute is between government's assertion that Kelly "**re**manufactured" MKS receivers and claimants' contention that Kelly "'manufactured' (not remanufactured)" them. That nit picking distinction is immaterial because the claimants do not contest the indisputable fact that Kelly fabricated receivers through a process that included the welding together of previously torch cut military M-14 receivers.[4]

4.  Claimants continue their tactic of obfuscation by making the assertion (Opp. 8 - 9) that "the Government implicitly recognizes that the defendant receivers were not 'restored' when it . . . states that the receivers 'can be <u>converted</u> to fire automatically.'" (Emphasis in original.) Ridiculous. The government intended for the word "converted" to be understood in its common (non-statutory) meaning. However, as the claimants point out, the word "converted" has a more limited meaning in section 5845(b). There, it specifically refers to the process of making something that could never before fire automatically into a machinegun. Accordingly, we concede the government used the word "converted" too loosely.

---

[4] The claimants' contention (Opp. 2) that Kelly started with M-14 receivers that "had been '**demilitarized**' by torch cutting them into two (2) sections" is immaterial and incorrect. (Emphasis added.)  Moreover, the mere assertion that Kelly used demilitarized M-14 receivers is insufficient under Rule 56. *U.S. v. One Harrington and Richardson Rifle, Model M-14, 7.62 Caliber,* 278 F.Supp.2d 888, 892 (W.D. Mich. 2003), *aff'd* 378 F.3d 533 (6th Cir. 2004). Nevertheless, to set the record straight, the Court may take judicial notice that the government introduced evidence during the criminal trial proving that the severance method of demilitarization of an M-14 receiver requires three (3) specifically located torch cuts. (See p. 4 of Gov't Exh. 212, reproduced in Appendix 7.)  Moreover, the government proved through the testimony of DCIS Special Agent Matthew Dunaway that the receivers alleged in paragraph 8 of the forfeiture complaint had not been demilitarized. Further, claimants have not argued why the eleven paired halves of M-14 military receivers alleged in paragraph 8 of the complaint are not machineguns. Those halves can be welded together inexpensively and without difficulty. Since none of the military M-14 design features have been taken off of the receiver halves, the welded receivers will be capable of functioning as machineguns. Thus, the paired M-14 receiver halves are "readily restorable" to fire automatically within the meaning of the National Firearms Act. See, Appendix 8, p. 2.

5.  The nit picking argument over the government's misuse of the word "converted" should not deflect the Court from observing that the definition of the word "restored" urged by the claimants advances the government's case.  Thus, claimants concede (Opp. 8) that "the term 'restored' means that an object was previously in a particular condition and has been returned to that previous condition." It is undisputed that the defendant receivers alleged in paragraph 7 of the forfeiture complaint were made from military M-14 receivers that previously fired automatically and were returned to that previous condition during Vasquez's video taped deposition. Accordingly, the defendant MKS receivers fall within the definition of "restored" urged by the claimants.

6.  We agree with the claimant's assertion (Opp. 10) that resort to the legislative history to construe the meaning of the term "readily restored" is "unnecessary". Accordingly, the Court should skip over pages 10 - 15 of the claimants' opposition.

7.  The claimants have not been able to distinguish any of the cases cited in the government memorandum.  They do not even attempt to distinguish *U.S. v. Smith*, 477 F.2d 399, 400 (8th Cir. 1973). Instead, claimants urge (Opp. 17) the Court to ignore *Smith* because the appellant's tactical decision to eschew filing a reply brief in that case was not saved by its petition for rehearing, which was denied. The claimants cannot be seriously suggesting that it is appropriate for this Court to consider a third party litigant's collateral attack on an appellate decision, and then disregard the attacked opinion upon a finding that the court of appeals erroneously denied a petition for rehearing.

Claimants attempt to distinguish *U.S. v. Aguilar-Espinosa*, 57 F.Supp.2d 1359 (M.D.Fla. 1999) falls short of the *Alice in Wonderland* test. Thus, their contention (Opp. 17) that the process of making MKS receivers capable of firing automatically falls outside of the standard considered by the court in *Aguilar-Espinosa* is bizarre. In that case, the court assumed that a "readily restorable" process involves "a less than arduous assembly of manageable and available

parts by a combination of (1) the ability of a reasonably skilled and informed but not necessarily expert or artistic worker and (2) tools commonly understood by and commonly available to such workers." *Id*. at 1362.[5]  However, the claimants do not assert that the 50 minute restoration done in this case primarily with a hand held tool was even close to arduous, or that Vasquez needed any special tools to accomplish the restoration.

There is no merit to the claimants contention (Opp. 18) that in *U.S. v. One Harrington and Richardson Rifle, Model M-14, 7.62 Caliber Serial Number 85279*, 378 F.3d 533, 534 - 535 (6th 2004), the Sixth Circuit impermissibly gave deference to the ATF's classification. Contrary to claimants' assertion (Opp. 18 - 19), it is the government's position that the Court must defer to the ATF's expertise with respect to the classification of firearms under 21 U.S.C. § 5845. However, because an ATF technician was able to easily make a typical MKS receiver fire automatically in about fifty minutes with only the addition of about forty ($40) dollars in parts and commonly available tools and equipment, the government made the tactical decision in this case to emphasize the facts that were proven during a video taped deposition that is available to the Court for viewing. With that overwhelming evidence, the government believes that the Court should be able to rule in its favor on the dispositive "readily restorable" issue without having to consider the agency's administrative expertise.

Nevertheless, in the alternative, the government's memorandum in support of summary judgment expressly relies on the ATF's interpretation of the term "readily restorable" as well as the consistent case law. (See n. 5 and accompanying text.) Furthermore, in footnote 3, the government argued that the Court should grant summary judgment as a matter of law because the defendant receivers are "designed to shoot" automatically. In support of that argument, the

---

[5] In dicta, the court opined that the restoration process cannot be dependent on "resources available to a master machinist with a modern and well-equipped lathe." 57 F.Supp.2d at 1362. The claimants do not assert that such resources are required to make MKS receivers fire automatically. Nor can they, because the only expensive piece of equipment utilized was a Tig welder, which was employed only because it was available; otherwise Vasquez could have done the welding with a variety of inexpensive and readily available equipment.

government cited three cases involving MKS receivers in which the courts expressly deferred to the ATF's classification. *U.S. v. One Harrington and Richardson Rifle, Model M-14, 7.62 Caliber Serial Number 85279,* 378 F.3d at 534 ("The ATF's analysis was thorough, its reasoning was valid, and its decision was consistent with earlier pronouncements"); *U.S. v. One TRW, Model M14, 7.62 Caliber Rifle,* 294 F.Supp.2d at 901 ("The government's classification of the [MKS] M-14 as a 'machine gun' . . . has not been shown to be arbitrary "); and *U.S. v. One (1) TRW U.S. Rifle Model 14 7.62x51 mm caliber S/N, 593006* (D. Az. 2004), (unpublished) (Appendix 2 to opening brief, p. 9) ("The Court finds . . . that the ATF did not abuse its discretion in determining . . . that Defendant is a machinegun."[6]).[7] Similarly, in a non-MKS case, the tenth circuit deferred to the ATF's classification of a weapon as a machinegun. *York v. Secretary of Treasury*, 774 F.2d 417, 419 - 420 (10th Cir.1985) (ATF classification of YAC STEN MK II weapon as a machinegun "requires deferential treatment by the court.") This Court should likewise defer to the ATF's reasonable machinegun classification of MKS receivers.

The claimants final shot – at *U.S. v. Catanzaro,* 368 F.Supp. 450 (D. Conn. 1973) –  is also wide of the mark. In that case, an ATF firearms enforcement officer (like Vasquez), who replaced parts costing less than $15,  was able to put an inoperable-sawed off shotgun in working condition in about one hour. *Id.* at 452 - 453. The claimants' attempt (Opp. 22) to distinguish the

_____

[6] In the text of the opening brief, we inadvertently reversed the appendix citations of the two unpublished cases. This brief contains the correct appendix citations.

[7] The opening memorandum also cites *U.S. v. One (1) MKS/Winchester Model M14 Machinegun Receiver, Serial No. 204143, One (1) MKS/TRW Model M14 Machinegun Receiver, Serial No. 1393707* (C.D. Ill. 2003) (unpublished) (Appendix 3 to opening brief, p. 5), which relies on "the credible expert testimony of Enforcement Officer Vasquez"). There is no merit to the claimants' contention (Opp. Br. 23) that the four cited decisions sustaining the ATF's classification of MKS receivers as machineguns are distinguishable because "[u]nlike those cases, there is nothing in the record . . . describing the design features of the defendant receivers." It appears that claimants have forgotten that claimant Kelly has admitted that the receiver that Vasquez restored during his video deposition was representational of the condition of MKS receivers when they left the factory. Thus, Kelly has admitted that all of the MKS receivers have the same design features. Because there was no dispute over the design features, we did not burden the record with copies of the ATF reports.

*Catanzaro* "readily restorable" holding by asserting that "[b]y contrast, in the case at bar, far more than assembly of easily available and inexpensive parts is involved." However, the undisputed facts establish that the restoration process cost only $25 more in this case, and took ten minutes less to accomplish.

8.  There is no merit claimants contention (Opp. 22) that the NFA is unconstitutionally vague.  Kelly made the same argument, and cited the same sixth circuit case in support of his motion to dismiss the criminal case. The Court denied the motion. Claimants have offered no reason why the Court should reconsider the adverse ruling.

<u>Conclusion</u>

For the foregoing reasons, the United States urges the Court to grant its motion for summary judgment.

Respectfully submitted,

THOMAS E. JOHNSTON
United States Attorney


<u>/s/ Michael D. Stein</u>
By:    Michael D. Stein WV Bar #8217
       Chief, Asset Forfeiture and
           Money Laundering Section
       P.O. Box 591
       Wheeling, WV  26003
       Telephone:  (304) 234-0100
       Fax:  (304) 234-0111
       E-Mail: Michael.Stein@usdoj.gov

## VERIFICATION

I, Richard Vasquez, hereby verify and declare under penalty of perjury that I am the

Assistant Chief of the Firearms Technology Branch of the United States Bureau of Alcohol,

Tobacco, Firearms and Explosives, and a Firearms Enforcement Officer; that I have read the

foregoing Reply Brief; that the factual assertions made therein are true to my knowledge; and that

the report included in Appendix 8 is authentic.

Dated:  July 8, 2005

/s/ Richard Vasquez
Richard Vasquez

<u>CERTIFICATE OF SERVICE</u>

I, Michael D. Stein, Assistant United States Attorney for the Northern District of West

Virginia, hereby certify that the foregoing GOVERNMENT'S REPLY BRIEF was filed with the

Clerk of Court using the CM/ECF system on July 11, 2005.

I hereby certify that I have mailed by United States Postal Service, this document to any

non CM/ECF participant.

Richard E. Gardiner, Esq.
Suite 404
10560 Main Street
Fairfax, VA 22030

and upon the following claimants:

Eugene Gzsanka
323 California Street
Campbell, CA  95008

Donald Sass
11695 Southwest Fairview Ln.
Tigard, OR  97223

Matthew Healey
2152 Shenandoah Drive
Grand Junction, CO  81503

Kevin Snodgrass
9505 Holmes Plaza # 5
Omaha, NE  68614

Cecil P. Smith
204 Crisp Road
Gastonia, NC  28056

Richard Vieira
11350 Calgary Road
Peyton, CO  80831

Francis Bliss, III
6205 Mindys Ridge
Fort Worth, TX  76126

Anthony Fabian
3872C South Genoa Circle
Aurora, CO  80013

Allan Fehlings
10438 Calumet Grove Drive
Fairfax, VA  22032

Respectfully submitted,

THOMAS E. JOHNSTON
United States Attorney

/s/ Michael D. Stein

By:    Michael D. Stein WV Bar #8217
       Chief, Asset Forfeiture and
         Money Laundering Section
       P.O. Box 591
       Wheeling, WV  26003
       Telephone:  (304) 234-0100
       Fax:  (304) 234-0111
       E-Mail: Michael.Stein@usdoj.gov